CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

APR 11 2019

JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| SAE HAN SHEET CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:18cv00074 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| COMMONWEALTH LAMINATING AND | ) | By: Hon. Jackson L. Kiser |
| COATING, INC., et al., | ) | Senior United States District Judge |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on Defendants Commonwealth Laminating and Coating, Inc., and Eastman Chemical Corp.'s Motion to Dismiss [ECF No. 21]. Defendants filed their Motion on January 4, 2019, Plaintiff Sae Han Sheet Co., Ltd., responded on January 23, and Defendants replied on January 30. I heard oral arguments on the Motion on February 28. I have reviewed the pleadings, arguments of counsel, and relevant law, making the matter ripe for disposition. For the reasons stated herein, I will grant Defendants' Motion and grant Plaintiff fourteen (14) days to file an amended complaint, if it so chooses.

I. **STATEMENT OF FACTS AND PROCEDURAL BACKGROUND**[1]

Plaintiff Sae Han Sheet Co., Ltd. ("Plaintiff") is a South Korean company engaged in international trade. Defendant Eastman Chemical ("Eastman") is a business entity with its corporate headquarters in Tennessee and its corporate offices in New Jersey. Defendant Commonwealth Laminating and Coating ("CLC") is a Virginia company which may have

---

[1] The facts are taken from Plaintiff's Complaint [ECF No. 1]. As this stage, it is appropriate to accept Plaintiff's factual allegations as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

manufactured some or all the goods at issue in this case. Eastman purchased CLC in December 2014.

From 2008–2013, Plaintiff and CLC were parties to a contract for the sale of Suntek brand glass-tinting film. In December 2013, CLC cancelled the contract because of Plaintiff's "inability to meet the purchase requirements" of the contract. CLC did, however, permit Plaintiff to continue to purchase its products and hold itself out as an "authorized dealer" of Suntek products.[2]

In late 2014 or early 2015, CLC (now owned by Eastman) reconfigured the chemical composition of its product as a cost-saving measure, but it marketed the new product as "the same" as its old product. The new version of the glass-tinting film was, according to Plaintiff, markedly inferior, and resulted in numerous complaints about the product. Customers complained of "lunar-crater type mold" on the film which rendered the product "unsuitable and unmerchantable for sale and application to consumers." (Compl. ¶ 15.) Instead of correcting to flawed design, Eastman's "officers and managers kept silent about the defects created by their own re-mixing of ingredients; and attempted to avoid adverse publicity by seeking General Releases as a flagrantly unconscionable 'condition' of replacing obviously[] defective products with non-defective products and wasted precious time, while [P]laintiff's business became associated with the functional, commercial equivalency of selling 'leprosy' ridden products in South Korea." (Id. ¶ 16.)

By November 2016, Plaintiff's "handful of customers" began disserting it *en masse* in favor of "suppliers who provided reliable, defect-free lines of products." (Id. ¶ 19.) At that time,

---

[2] Plaintiff describes this as a verbal continuation of the terms of the 2008 agreement, but alleges that Eastman stated, via e-mail: "Due to SaeHan Sheet's consistent inability to meet the purchase requirements, ***we must terminate the agreement***. You will be able to continue to purchase SunTek products from CLC in 2014, however, you will not be the exclusive distributor of SunTek products in 2014." (Compl. ¶ 8 (emphasis added).)

Plaintiff contends Eastman's officers were "falsely" claiming to Plaintiff that it had only "recently discovered" the defects, even though other Eastman employees confided to Plaintiff that Eastman was aware as early as August 2016.

Plaintiff filed the present action in the United States District Court for the Eastern District of Virginia on September 26, 2018. By order of that court, the case was transferred to this court on December 21, 2018. (Order, Dec. 21, 2018 [ECF No. 19].) On January 4, 2019, Defendants filed the present Motion to Dismiss. [ECF No. 21.] Plaintiff responded on January 23 [ECF No. 31], and Defendants replied on January 30 [ECF No. 32]. I heard oral arguments on the Motion on February 28, and the matter is now ripe for disposition.[3]

## II.     STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. In determining facial plausibility, the court must accept all factual allegations in the complaint as true. Id. The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (internal quotation marks omitted).

---

[3] The Pretrial Order entered in this case states that "[b]riefs in opposition must be filed within 14 days of the date of service of the movant's brief (or within 14 days of this Order if a motion and brief have been served prior to this Order." **EXCEPT FOR GOOD CAUSE SHOWN, IF BRIEFS IN OPPOSITION TO THE MOTIONS ARE NOT FILED, IT WILL BE DEEMED THAT THE MOTION IS WELL TAKEN.** (Order, Jan. 4, 2019 [ECF No. 24].) Defendants concede that they consented to Plaintiff's late brief in opposition, but Plaintiff failed to seek leave of the court to file its brief out-of-time. Regardless of any agreement among the parties, Plaintiff is required to seek the court's permission before ignoring court Orders.

Therefore, the complaint must "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

## III. DISCUSSION

Plaintiff has brought six counts against Defendants: breach of contract under the U.N. Convention for the International Sale of Goods ("UNCISG") (Count 1); breach of the covenant of good faith and fair dealing (Count 2); unjust enrichment (Count 3); tortious interference with a prospective advantage (Count 4); tortious interference with business relations (Count 5); and tortious interference with a contract (Count 6).

### a. Choice of Law

The parties have made no effort to determine what law applies: Virginia, South Korea, or Delaware.[4] A federal court, sitting in diversity jurisdiction, applies the choice-of-law provisions of the state in which it sits. See Seabulk Offshore, Ltd. v. Am. Home Assurance Co., 377 F.3d 408, 418–19 (4th Cir. 2004) (citing Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). Defendants have submitted a presumably valid "Conditions of Sale" that Plaintiff does not appear to contest. That document, which purportedly covers all sales, states that the contract will be "governed by and construed under the laws of the State of Delaware . . . ." [ECF No. 22-1.] As to the contract claims, then, Delaware law controls. See Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 624 (4th

---

[4] In its Motion to Dismiss, Defendants proffered a "Conditions of Sale for Sales from Legal Entities in the United States," which stated, in relevant part, that "[a]ll sales are subject to these conditions," "[t]his contract will be governed by and construed under the laws of the State of Delaware," and "[t]he UN Convention for the International Sale of Goods does not apply to this contract."

Cir 1999) ("Virginia law looks favorably upon choice-of-law provisions in a contract, giving them full effect except in unusual circumstances." (citing Tate v. Hain, 25 S.E.2d 321, 324 (Va. 1943)),

As to the non-contract claims, the question arises of what law should apply. In 2016, Judge Ellis in the Eastern District of Virginia faced a virtually identical question. See Run Them Sweet, LLC v. CPA Global Limited, 224 F. Supp. 3d 462 (E.D. Va. 2016). He held that contract language that the parties' relationship would be "governed by and construed in accordance with the laws of the Commonwealth of Virginia" was sufficiently broad to bring even the non-contract claims under Virginia law. Id. at 465–66. Based on Judge Ellis's holding, the contract language at issue in this case is sufficiently broad to bring the non-contract claims under the parties' choice-of-law provision, and therefore Delaware law applies to both the contractual and non-contractual counts asserted in Plaintiff's Complaint.

    b. <u>Count 1—Breach of Contract under the UNCSIG</u>

Defendants contend that the parties waived application of the UNCISG to their agreement; Plaintiff argues that the UNCSIG applies because it was not waived in the 2008 contract. Plaintiff stated in its Complaint, however, that the 2008 contract was cancelled in 2013. (Compl. ¶¶ 6, 8 ("[W]e must terminate the agreement.").) After that, it appears the "Conditions of Sale" controlled the relationship between the parties, and that document expressly disclaimed the applicability of the UNCISG. It is well-settled that the parties, by agreement, may opt out of the UNCISG. See Delchi Carrier SpA v. Rotorex Corp., 71 F.3d 1024, 1027 n.1 (2nd Cir. 1995) (noting that parties to a contract may opt out of the UNCISG for any contract). Accordingly, any claim under the UNCISG will be dismissed.

### c. Count 2—Breach of the Covenant of Good Faith and Fair Dealing

If this count is raised under the UNCISG, as Plaintiff seems to suggest, it should be dismissed for the reasons stated above.

If, however, the claim is raised under Delaware law, it still fails. Under Delaware law:

> The implied covenant of good faith and fair dealing inheres in every contract and "requires 'a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits' [*sic*] of the bargain." The implied covenant cannot be invoked to override the express terms of the contract. Moreover, rather than constituting a free[-]floating duty imposed on a contracting party, the implied covenant can only be used conservatively "to ensure the parties' 'reasonable expectations' are fulfilled." Thus, to state a claim for breach of the implied covenant, [the plaintiff] "must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." General allegations of bad[-]faith conduct are not sufficient. Rather, the plaintiff must allege a specific implied contractual obligation and allege how the violation of that obligation denied the plaintiff the fruits of the contract. Consistent with its narrow purpose, the implied covenant is only rarely invoked successfully.

Kuroda v. SPJS Holdings, LLC, 971 A.2s 872, 888 (Del. Ch. Apr. 15, 2009) (internal citations omitted). Plaintiff has not alleged the violation of any specific contractual obligation, and therefore has failed to state a claim under Delaware law. Rather, Plaintiff's allegations are a "[g]eneral allegation[] of bad faith" in its dealings with Plaintiff, which are exactly the type of allegations which do *not* qualify for recovery for breach of the covenant of good faith and fair dealing. Count 2 is insufficiently plead as a matter of law, and will be dismissed.

### d. Count 3—Unjust Enrichment

"Unjust enrichment is 'the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.' The elements of unjust enrichment under Delaware law are: (1) an

enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." Nemec v. Shrader, 991 A.2d 1120, 1130 (Del. 2010) (internal citation omitted).

Assuming Plaintiff is pleading this claim in the alternative (since a valid contract would negate the fifth element, as a breach of contract action would be a "remedy provided by law"), it has still failed to plead an enrichment. Nowhere in its Complaint does Plaintiff allege that it paid Defendants anything (an enrichment), nor that it lost anything (an impoverishment). At most, Plaintiff appears to allege that, because of Eastman's poor-quality product, Plaintiff's customers stopped buying Eastman's products from Plaintiff. Such an allegation does not state a claim for unjust enrichment, as those facts do not allege either an enrichment of Defendants or an impoverishment of Plaintiff.

    e. <u>Count 4—Tortious Interference with a Prospective Advantage</u>

Although the heading offered by Plaintiff does not appear to align with a cognizable cause of action under Delaware law, the closest analog is tortious interference with a prospective business opportunity.

> To establish a tortious interference with a prospective business opportunity claim, a plaintiff must prove each of the following elements: (1) the reasonable probability of a business opportunity; (2) the intentional interference by the defendant with that business opportunity; (3) proximate causation; and (4) damages, all of which must be considered in light of the defendant's privilege to compete or protect his business interests in a fair and lawful manner. To meet the reasonable probability of a business opportunity prong, a plaintiff "must identify a specific party who was prepared to enter into a business relationship [with the plaintiff] but was dissuaded from doing so by the defendant and cannot rely on generalized allegations of harm." To meet the intentional interference prong, a plaintiff must prove that the defendant's interference with the plaintiff's business opportunity was intentional and wrongful or improper. When considering whether a defendant's actions were improper, the Court must assess these actions "in light of a

> defendant's privilege to compete or protect [its] business in a fair
> and lawful manner."

Orthopaedic Assocs. of S. Delaware, P.A. v. Pfaff, No. S17C-07-016 ESB, 2018 WL 822020, at *2 (Del. Super. Ct. Feb. 9, 2018) (internal citations omitted). Because Plaintiff has failed to allege "a specific party who was prepared to enter into a business relationship" with it, it has failed to state a claim, and Count 4 will be dismissed.

    f. <u>Count 5—Tortious Interference with Business Relations</u>

Delaware law appears to treat tortious interference with a prospective business opportunity and tortious interference with a business relationship the same.

> The basic elements which establish a prima facie tortious interference with a business relationship in Delaware are the existence of a valid business relation . . . or expectancy; knowledge of the relationship or expectancy on the part of the interferer; an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted." Put another way, a plaintiff must establish: (1) the reasonable probability of a business opportunity; (2) intentional interference; (3) proximate causation; and (4) damages, "all of which must be considered in light of defendant's privilege to compete or protect his business interests in a fair and lawful manner."

Wilco AG v. Packaging Technologies & Inspection LLC, 615 F. Supp. 2d 320, 324–25 (D. Del. 2009) (internal citations omitted). Again, Plaintiff has failed to allege (1) a valid business relation or expectancy or (2) knowledge of the relationship on the part of Defendants. Count 5 will be dismissed.

    g. <u>Count 6—Tortious Interference with a Contract</u>

For the same reasons as those discussed above regarding Count 5, Count 6 will be dismissed as well. "Under Delaware law, a claim for tortious interference with a contract has five elements: (1) a valid contract; (2) about which the defendants have knowledge; (3) an intentional act by the defendants that is a significant factor in causing the breach of the contract; (4) done

without justification; and (5) which causes injury." Gill v. Delaware Park, LLC, 294 F. Supp. 2d 638, 645 (D. Del. 2003) (citing Irwin & Leighton, Inc. v. W.M. Anderson Co., 532 A.2d 983, 992 (Del. Ch. 1987)). Plaintiff has not alleged the existence of a valid contract with a third party, and thus this claim is deficient on its face. Accord id.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Complaint fails to state a claim and will be dismissed. Plaintiff will be granted fourteen (14) days to file an amended complaint, if it so chooses.

The clerk is directed to forward a copy of this Order to all counsel of record.

**ENTERED** this 11th day of April, 2019.

                                             s/Jackson L. Kiser
                                             SENIOR UNITED STATES DISTRICT JUDGE